## F. W. ROBERTSON, JR., *v.* THE STATE.

1. CHARGE OF THE COURT.— A charge was objectionable that instructed the jury "if you can reasonably account for or explain the facts and circumstances in evidence before you in this case in any way consistently with defendant's innocence, without resorting to unreasonable facts and theories, then you should do so and acquit. But if you cannot account for nor explain the facts and circumstances detailed before you in this case upon any reasonable ground consistently with defendant's innocence, then if you cannot do this you should convict."

2. EVIDENCE.—See the opinion in this for a *resumé* of evidence held insufficient to sustain a conviction for an assault with intent to commit robbery.

APPEAL from the District Court of Williamson. Tried below before the Hon. W. A. BLACKBURN.

The opinion discloses the case.

*Makemson, Fisher & Price,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WINKLER, J.   This appeal is from a judgment of conviction for an assault with intent to commit the offense of robbery, alleged to have been committed upon one A. C. Shamblin in Williamson county, on October 3, 1877. The trial in the court below commenced on January 13, 1881, and on that day a jury was impaneled and sworn, and the defendant entered his plea of "not guilty." The jury returned their verdict on the 14th day of January, 1881; by which the defendant was found guilty of an

assault with intent to commit the offense of robbery, and his punishment was assessed at confinement in the penitentiary for a term of two years.

The principal witnesses relied on by the prosecution for a conviction, on the trial below, were A. C. Shamblin, John Bonner, and Dick Ray. There were several other witnesses introduced on behalf of the State, for the purpose of proving isolated facts and circumstances, or for certain special purposes. The main facts, however, which connect the defendant with the crime charged against him, other than isolated circumstances upon which reliance is placed, is the testimony of the three witnesses, Shamblin, Bonner and Ray. The important features of the testimony of each of these three witnesses may be stated, briefly, as follows: The witness Shamblin is the person upon whom the assault is alleged to have been committed. His testimony comes before the court free from any taint of suspicion that it is anything else than a truthful narration of the transaction as seen by himself. This witness testified that on Wednesday, October 3, 1877, on the public road between Georgetown and Round Rock, and near the latter place, in Williamson county, Texas, a man attempted to rob him. It was a mile or two from Round Rock, where the road crosses a branch where there is a thicket of timber and brush on one side of the road. The witness had a wagon and team and four bales of cotton, and was on his way to Austin, and had also about five dollars in money with him. It was about one hour after sun-up. The man came out of the brush without any coat on, and was bare headed, and had on goggles. He told the witness that he had a sick friend there and asked witness to take him on his wagon to Round Rock. Witness assented and started to help him bring the sick man, when he (the man with the goggles) drew a pistol on the witness and said for him, witness, to lie down,—that he was going to tie the witness, and take

his wagon and team and cotton to Round Rock, and sell them. The witness says he was frightened and thought at first that the man might kill him, and started to lie down, but raised up before he was entirely down and told the man that no one man could make him do that, and bluffed him off. The man began to back and said if he, the witness, would promise not to say anything about it, he would let him alone; and the witness promised. Witness then went back, got on his wagon and went on. He says the man who tried to rob him was about the size of the defendant, and had black hair. He says he was working four horses, two of which were paints. On cross-examination this witness said, giving his language as found in the statement of facts: "I do not·say it was defendant who attempted to rob me, because I do not know. * * * The man that attempted to rob me had black hair, and had no mustache; the defendant has red hair and red mustache. I do not recognize the defendant as the man."

The witness Bonner testified that he knew nothing about the commission of the offense except what the defendant told him. He then proceeds as follows: "On Friday night of the Fair week in Belton, 5th October, 1877, the defendant came to my room and called me at the window. It was 12 o'clock at night. I knew him well, for we were intimate. He told me that he had been to Austin and Round Rock, and that near Round Rock he attempted to rob a man who had a wagon and some cotton. Defendant said he was disguised; had on goggles, and had had his hair dyed by a barber in Round Rock. Said he told the man he had a wounded friend, and asked him to take him on his wagon to Round Rock; that the wagoner got down and followed him a piece from the road, and he drew a pistol on the man and told him to give up his money and lie down and let him tie him, or he would kill him; said he intended to tie the man and

take his cotton on to Round Rock and sell it, but saw a man passing along the road and was afraid the wagoner would see him too and give the alarm, so he told the wagoner he would let him off if he would say nothing about it, which he agreed to do. He said the man was working a paint horse in his team. I know defendant is the man who came to my window and told me of trying to rob a man near Round Rock. The Belton Fair began that year on Tuesday, the 2d of October." On cross-examination Bonner stated: "I am not friendly with defendant. I have, or rather my father has, employed counsel to prosecute this case. I am indicted in Bell county for robbery of Tobles' jewelry store. Defendant is also charged with same robbery. I was arrested in the fall of 1877, and taken to Bell county. Defendant told me he went to Waco after the robbery and got a barber to remove the dye from his hair, and said the damned barber never did get it all off his eye-brows. The defendant told me this on Friday, October 5th, 1877; it was 12 o'clock at night."

The witness Ray, after testifying that he knew the reputation of John Bonner in the neighborhood where he lived for truth and veracity, and that it is good, says: " On the night of the 4th of September, 1878, I went, at the request of John Bonner, and concealed myself in a tree near Belton, and Bonner went off and returned with defendant, F. W. Robertson, and they were talking when they came up under the tree, and I heard the defendant say, 'Shamblin could not swear to me, and if the negro barber swears to blacking my hair I will kill him.' I knew it was defendant with Bonner, for I know him well and know his voice; was near him." On cross-examination he said: "I thought it was about 9 o'clock when defendant and Bonner came under the tree; it might have been later; I had no watch. It was a bright moonlight night. I was in an elm tree."

There was other testimony tending to show that the defendant was at and about Round Rock at a time not generally stated with distinctness, but evidently introduced in order to show the proximity of the defendant to the scene of the offense at the time of its commission, as a circumstance tending to connect the defendant with its perpetration. These witnesses, without exception, when the color of the defendant's hair or beard is mentioned, say it was red. The assaulted party having testified that the man had *black hair* and *no mustache*, and that the defendant has red hair and red mustache, it became necessary that the State should make further proof of the connection of the defendant with the crime charged against him. It was evidently attempted to supply this necessary link in the testimony by showing that the defendant had disguised himself for the purpose of preventing his identification, and, in addition to employing goggles, as the assaulted party testified, that he had gone to a barber and procured his naturally red hair and beard to be dyed black, and this proof is attempted to be supplied by the evidence of Bonner and Ray, in the manner above set out. In this connection, before proceeding further, we desire to express our admiration at the usefulness and the necessity of the right of cross-examination of a witness. In the present case by this means it was developed, not only that the party upon whom the assault was alleged to have been committed was unable to identify the defendant as the guilty party, and also that the witness Bonner was not only at enmity with the defendant, but that in all probability he had a deep interest in securing a conviction of the defendant. The witness Ray if left alone proves but little except that he, for some cause unexplained, was a willing instrument in the hands of the witness Bonner in placing himself at Bonner's instance in a position where he could play the eavesdropper on the defendant and overhear a part of a

conversation between him and Bonner, in which, it is contended, the defendant made an admission tending to support the idea that the defendant had disguised himself in order that he might perpetrate this particular crime without being recognized. It is not shown that the defendant had disguised himself either by dyeing his hair or otherwise, except by the reproduction of his midnight admission to Bonner, supported as it is by the statement of Ray as heard by him from his position in a tree. It is not to be overlooked that the witness Shamblin testified that the man who made the attempt to rob him had no mustache, whilst it is not shown that he had a black mustache even in the interview with Bonner or in the conversation overheard by the witness Ray.

The testimony by which it was attempted to identify the defendant with the attempt at the robbery and to avoid detection and being identified by having dyed his hair, coming as it does, is, to say the least, very meagre and unsatisfactory as a foundation upon which to base a conviction for a felony. We would not feel warranted, however, in setting the verdict aside on this ground alone, except that to permit the judgment to stand would be to sanction a precedent dangerous to the citizen when the demands of the law had been fully complied with in other respects.

In this case we are unable to say that all the rights of the defendant were properly guarded in the instructions given to the jury on the trial below. In our opinion the following paragraph of the charge is not entirely free from objection: "If you can reasonably account for or explain the facts and circumstances in evidence before you in this case in any way consistently with the defendant's innocence, without resorting to unreasonable doubts and theories, then you should do so and acquit. But if you cannot account for nor explain the facts and circumstances detailed before you in this case upon any reason-

able ground consistently with defendant's innocence, then if you cannot do this you should convict." A charge quite similar to the one here under consideration, and given under like circumstances, though not absolutely condemned in terms, was criticised unfavorably by this court in *Estep* v. *State*, 9 Texas Ct. App. 369. A defendant in a criminal prosecution enters upon a trial shielded by the presumption of law that he is innocent of the crime of which he is accused, which presumption abides with and protects him from punishment, until his guilt is established by the proofs adduced against him. The language of the law is this: "The defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence; and in case of reasonable doubt as to his guilt he is entitled to be acquitted." Code Crim. Proc. art. 727. "Every person accused of an offense shall be presumed to be innocent until his guilt is established to the satisfaction of those whose province it is to try him." Penal Code, art. 11.

We are constrained to say that with these plain principles of the statute law staring us in the face, it is erroneous, especially in a case of doubtful evidence as to guilt, for the court by its charge to direct, or even permit the jury to go in search of evidence by which they can find a reasonable explanation of the facts and circumstances consistent with the defendant's innocence before they would be warranted in acquitting, when the law presumes that he is innocent independent of all those facts and circumstances until his guilt is established by legal evidence. If the evidence leaves the case involved in reasonable doubt as to his guilt, that doubt inures to the benefit of the defendant, and the law says he is entitled to be acquitted. An instruction on the presumption of innocence and reasonable doubt is a proper and necessary charge in all criminal trials, but as a general rule experience has demonstrated that a charge embracing the language of the

Code, without elaboration or attempt at explanation, is amply sufficient.  *Massey* v. *State,* 1 Texas Ct. App. 563, and cases cited in note 215, p. 538, Clark's Crim. Laws of Texas.  The charge of the court, whilst in other respects so far as observed it was an admirable as a correct enunciation of the law of the case, was in our opinion marred in this feature, and the jury were liable to be led to an erroneous conclusion to the injury of the defendant.  Except in cases where the inculpatory facts depend upon circumstantial evidence, a charge on the presumption of innocence and reasonable doubt couched in the language of the statute has uniformly been held sufficient; but, when a conviction depends alone upon circumstantial evidence, a proper charge on that character of evidence is required by the rulings of this court.  *Barr* v. *State, ante,* p. 507, and authorities there cited.

It seems from the supplemental motion of the defendant for a new trial, and from affidavits appended thereto, that it was a matter of considerable moment as bearing upon the main defense of the accused, which was that of *alibi,* to determine when a certain Methodist quarterly conference or camp meeting came on, and that this was an incidental question which was not developed until after the trial had begun.  It is not seen that the testimony bearing upon the subject was of a nature which the defendant or his counsel could reasonably have anticipated in preparing for trial.  Still we are not assured that in strictness of law the testimony said to be newly discovered was of sufficient materiality and importance to require a reversal of the judgment.  We have not deemed it important to discuss in this opinion any of the other questions presented by the record and discussed in argument.

In view of the peculiar features of this case, and considering the meager and unsatisfactory character of the testimony, together with the liability of the charge to mislead the jury, and the probability that the defendant

will be able on another trial to settle definitely the time when the Methodist meeting was held, as that fact bears upon the defense of *alibi*, taken altogether, we are of opinion the ends of justice and a due administration of the law required of the court below that he should have granted the defendant a new trial; and the refusal of which was, in our opinion, an erroneous ruling of the court for which the judgment will be reversed and the case remanded.

*Reversed and remanded.*